ELEASON, Administratrix, and others, Appellants, vs. WESTERN CASUALTY & SURETY COMPANY, Respondent.*

*November 18—December 15, 1948.*

* Motion for rehearing denied, with $25 costs, on February 15, 1949.

136

For the appellants there were briefs by *Stafford & Stafford* of Chippewa Falls, and *Slocumb & Bundy* of Menomonie, and oral argument by *Harold E. Stafford* and *Ira O. Slocumb*.

For the respondent there was a brief by *Ramsdell & King, George M. Carroll,* and *Frank L. Morrow,* all of Eau Claire, and oral argument by *Mr. Bailey Ramsdell* and *Mr. Carroll.*

FAIRCHILD, J. There are three questions to be determined on this appeal: (1) Was Luer negligent in operating a truck when he was subject to epileptic seizures? (2) Does a cause of action for wrongful death survive the death of the widow of L. C. Brown? (3) For whose benefit does a cause of action exist?

(1) Was Luer negligent in operating a truck when he was subject to epileptic seizures? The trial court held that he was not. The court regarded the running down of deceased as having enough of the elements of an unavoidable accident to excuse Luer from all liability for the death of Brown. In the memorandum opinion the belief is expressed "that the epileptic seizure suffered by Luer may properly be classified as an 'act of God,' and that the injury to L. C. Brown which followed was an unavoidable accident." This conclusion lacks support because under sec. 85.13, Stats., it is unlawful for anyone who is subject to epilepsy to operate an automobile. Under sec. 85.08 (6) (f), one who is afflicted with or suffering from any "physical disability or disease such as to prevent him or her from exercising reasonable control over a motor vehicle" is not entitled to a driver's license. There is the further provision in sec. 85.08 (6) (j), which forbids the issuance of a license to any person subject to epileptic seizures. In considering the question of Luer's negligence the foregoing rules of law become of prime importance. They direct inquiry to Luer's

physical or diseased condition. The term "act of God" in its legal sense means such inevitable accident as cannot be prevented by human care, skill, or foresight. *Chicago & N. W. R. Co. v. Sawyer,* 69 Ill. 285, 18 Am. Rep. 613; *Mueller Grain Co. v. Chicago, P. & St. L. R. Co.* 200 Ill. App. 347. Had he complied with the statutes he would not have placed himself in a position to injure Brown. Hence because the injury might have been avoided by prudence and foresight it cannot be considered an "act of God."

Luer knew he was subject to spells or seizures. This appears from his testimony. After telling of the last he could remember before he lost control over his machine he said that he had been subject to fits of epilepsy before—he did not know how long, but he had those spells off and on before that. "I never saw any doctor about these spells before the accident. I was right behind the wheel when I had this spell. I lost consciousness completely. . . . I do not think they call it epilepsy. These spells when I lose consciousness last about fifteen minutes. During that fifteen minutes I am completely unconscious. I do not know what is going on at all. After I come out of them I am awfully weak. I do not think I can guide a car when I am coming out of a spell. When these spells come on me I am just about done for a half a day." He had suffered these seizures for approximately six years. It was generally known in the village that he was subject to such spells.

The trial court evidently based its ruling on the fact that Luer did not know that he had epilepsy. However, the undisputed evidence is that Luer did know that he was subject to spells which would render him unconscious for a quarter of an hour and very weak for some hours after. The problem then becomes a question of whether it is negligence for a man to drive a car when he knows that he is subject to such spells. It is considered that, as a matter of law, this is negligence. The fact that Luer did not know the technical name of his malady is not controlling. What is important is that he knew that

he might be unable to control the car which he was driving. He also must have known that if he lost control of the car there was danger of someone being injured. Driving a car where people are to be met with on highways today is dangerous enough if one has complete control of his powers. When a driver knows that he may become unconscious and lose that control at any moment, he must be held negligent in attempting to drive. This is in keeping with previous decisions and the statutes. The evidence warrants no other finding than that Luer knew he was likely at any time to become incapacitated to control a motor vehicle; that in itself is sufficient to make driving a car negligence.

As to the question of the negligence of Berg, Luer's employer, the evidence concerning his part in the hiring of Luer is such as to sustain the court's holding that he was free from negligence in that respect. He made a reasonable investigation of Luer's ability to drive and did not know of the epilepsy or the spells of unconsciousness.

(2) Does a cause of action for wrongful death in the widow of L. C. Brown survive her death? Appellants in their reply brief rely on the rule recognized in *Milwaukee v. Boynton Cab Co.* 201 Wis. 581, 229 N. W. 28, 231 N. W. 597. Since that decision was rendered the legislature in 1931 amended sec. 331.04, Stats. We, therefore, do not consider that ruling as controlling here. Ch. 263, Laws of 1931, added the following clause to sec. 331.04: "If any of the foregoing relatives shall die at any time after such cause of action shall have accrued, the relative or relatives next in order named above shall be entitled to recover for the wrongful death of the deceased." By that clause, when the widow died, a cause of action for the wrongful death vested in the deceased's lineal descendants. It was not her cause of action, but a new one given the lineal descendants by the statute. The *Boynton Case,* which is not an interpretation of the present statute, has no application here.

Under sec. 102.29 (2), Stats., the compensation insurer also had a right to maintain or join in an action in tort for the wrongful death of Brown by reason of its compensation payment. That section provides in part:

"An employer or compensation insurer who shall have paid a lawful claim under this chapter for the injury or death of an employee shall have a right to maintain an action in tort against any other party responsible for such injury or death. . . . If recovery shall be had against such other party, by suit or otherwise, the compensation beneficiary shall be entitled to any amount received over and above the amount that the employer or insurer have paid or are liable for in compensation, . . . and in no event shall the compensation beneficiary be entitled to less than one third of the amount recovered from the third party. . . ."

Therefore a cause of action existed with an interest therein in the lineal descendants of the deceased and the compensation carrier. Either one or both could sue for the damages caused to the descendants by the negligence of the third party.

(3) The question, for whose benefit does a cause of action for the wrongful death exist, is settled by statute. We are not presently concerned with the amount which any owner of an interest in the claim may be able to recover. That is to be measured by the pecuniary loss to the descendants. Sec. 331.04, Stats.

Both the descendants of the deceased and the compensation insurer had an interest in the recovery. The statutes referred to provide how those interests should be apportioned. This court has held that there is no separate cause of action created in the compensation carrier by sec. 102.29 (2), Stats. His cause of action is derivative; he stands in the shoes of the employee or, here, of his lineal descendants. *London G. & A. Co. v. Wisconsin P. S. Corp.* 228 Wis. 441, 279 N. W. 76.

Therefore the measure of recovery must be the pecuniary injury, if any, resulting to the children by reason of their father's death.   This amount is subject to the claim of the compensation insurer.

*By the Court.*—Judgment dismissing the complaint of the administratrix of the estates of L. C. Brown and Grace M. Brown and holding Berg not negligent is affirmed.   It is reversed as to the other plaintiffs.   Cause remanded with directions to reinstate the complaints of the descendants of L. C. Brown and of the insurance carrier and for further proceedings according to law.